**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

MATTHEW HYLTON,

        Petitioner,

    v.

TRACY JOHNS,

        Respondent.

CIVIL ACTION NO.: 5:19-cv-3

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Matthew Hylton ("Hylton"), who was formerly incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus.  Doc. 1.  Respondent filed a Motion to Dismiss, and Hylton filed a Response.  Docs. 8, 10.  For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DENY** Hylton's Petition.  I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Hylton leave to appeal *in forma pauperis*.

### BACKGROUND

Hylton was convicted in the Southern District of Florida on December 16, 2009, of armed robbery, in violation of 18 U.S.C. § 2113(a) and (d), and was sentenced to 132 months' imprisonment.  Doc. 1 at 1; Doc. 8-1 at 6.  He has been released from federal custody.[1]

---

[1]    At the time Respondent filed his Motion to Dismiss, Hylton's release date was set to be September 4, 2019.  Doc. 8 at 1.  Hylton was released from the Bureau of Prisons' custody on June 5, 2019.  https://www.bop.gov/inmateloc/, search for Number 73346-004, Matthew Hylton, last accessed Oct. 25, 2019.  Hylton has yet to notify the Court of his new address, despite being required to do so.

As a result of disciplinary hearing proceedings based on the attempted introduction of a hazardous tool (cellular phone), Hylton was charged with a Code 108A violation and sanctioned with the loss of 41 days' good conduct time, 90 days' non-vested good conduct time, 60 days' disciplinary segregation, and loss of visitation, commissary, and telephone privileges for 6 months.  Doc. 1 at 2; Doc. 8 at 2, 3.

## DISCUSSION

In his Petition, Hylton asserts the Disciplinary Hearing Officer's ("DHO") finding of guilt on the charged offense conflicted with the objective evidence of record, in violation of Hylton's right to due process.  Doc. 1-1 at 3.  Hylton also asserts the DHO's written findings do not comply with inmate discipline regulations, are not based on objective facts, contain conflicting evidence, and were not based on the greater weight of evidence.  Id.  Hylton asks the Court to reverse the DHO's findings, restore all lost good conduct time and lost privileges, and expunge his record.  Id. at 9.

Respondent avers Hylton received all procedural and substantive due process protections to which he was entitled during the disciplinary hearing proceedings.  Doc. 8 at 4, 8.  In addition, Respondent contends Hylton's sanctions were permitted under Bureau of Prisons' ("BOP") policy.  Id. at 11.

---

This could serve as another basis for recommending dismissal of this cause of action.  It appears Hylton is now detained in the Folkston Immigration and Custom Enforcement ("ICE") Processing Center in Folkston, Georgia.  Doc. 1, Case Number 5:19-cv-76 (S.D. Ga.).

I.      **Whether Hylton Was Afforded Due Process Protections During the Disciplinary Proceedings**

Hylton contends his right to due process was violated because the DHO's findings conflicted with objective evidence and were contrary to the inmate discipline policy.[2] Respondent counters that Hylton is essentially arguing for a standard of proof higher than the "some evidence" standard.  Doc. 8 at 10.  Respondent contends the DHO's decision was based on "some evidence," and the Court should not disrupt the DHO's findings.  Id. at 10–11.

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985).  Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011).  "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Hill, 472 U.S. at 456.  "The fundamental fairness guaranteed

---

[2]      Hylton does not contend his right to due process was violated as a result of the actual hearing. Even if he did, however, such a claim would be subject to denial.  A prisoner has a protected liberty interest in statutory good time credits, and therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are taken away or denied.  O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)). That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him; (2) is given the opportunity to call witnesses and present documentary evidence; and (3) receives a written statement setting forth the disciplinary board's findings of fact.  Id. (citing Wolff, 418 U.S. at 563–67).  Additionally, the Eleventh Circuit Court of Appeals has determined an inmate has the right to attend his disciplinary hearing.  Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992). Importantly, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants.  Id.  Hylton received written notice of the charges against him well in advance of the hearing, was advised of his rights applicable during the hearing, attended the hearing, and received written notice of the DHO's findings.  Doc. 1 at 1–2; Doc. 8 at 5–8.

by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. Appx' 752, 757 (11th Cir. 2006) (internal citation omitted).

In this case, Hylton received an incident report on July 27, 2018 after a package bearing his name was sent to D. Ray James Correctional Facility, and staff discovered the package contained a cellular telephone hidden in a "bundle of legal paper . . . ." Doc. 8-2 at 2. DHO Perry conducted a disciplinary hearing regarding Hytlon's charged offense of attempted introduction of a hazardous tool (Code 108A) after the matter was referred for a hearing by the Unit Discipline Committee ("UDC"). Id. at 2–3. DHO Perry noted Hylton denied having anything to do with a cellular phone being mailed to him or with having any familiarity with the law firm listed on the return address of the package addressed to him and containing legal documents and a cellular phone. Id. at 4, 7–8. DHO Perry also noted Hylton told Officers Reynolds and Hagood he was not accepting responsibility for the package but did sign the form allowing these officers to open the package. Id. at 7. However, Hylton stated everything in the box was public information that anyone could have sent him and that he was unsure of the package's origin. Id.

DHO Perry recounted the report Officer Reynolds wrote detailing mailroom clerk K. Murray screening incoming mail, and the scanner was able to detect a "metal object within a[] brown box[]" addressed to Hylton labeled legal mail from Bradford Cohen Law in Florida. Id. at 8. The metal object was the size of a cellular phone. Id. at 8–9. Because the package was labeled legal mail, staff could not open it outside of Hylton's presence.[3] Hylton said he was not

---

[3]     DHO Perry recounted statements provided by mailroom clerk Murray, Supervisor Spikes, and Officer Hagood which described the scanning of the box and what was discovered in the papers. Doc. 8-2 at 9. The Court will not describe these statements in detail, as these statements are cumulative of Officer Reynolds's report.

expecting legal mail and that Bradford Cohen Law was not his law firm.  Officer Reynolds stated

there were over 500 pieces of paper inside the box held together by three zip ties which were

legal papers, the majority of which bore Hylton's name.  Id. at 8–9.  Officer Reynolds noticed

the papers had been modified at the ends where they were tied and, as Office Hagood flipped

through the pages, Officer Reynolds noticed a "cellular phone device wedged in the cut out

papers."  Id. at 9.  The cellular phone was a black and silver Samsung Galaxy J3 Mission with a

black charging cord.  Id.

DHO Perry also considered the statement of Special Investigative Supervisor Henderson,

who called the Bradford Cohen Law office.  The receptionist informed Henderson the firm never

had a client named Hylton, nor had anyone there mailed anything to D. Ray James, especially a

cellular phone.  Id.

In addition to the incident report, DHO Perry considered Hylton's statements, Hylton's

presented evidence consisting of two legal mail envelopes and cover letters dated April and May

2018 and copies from the inmate legal mail log book, memoranda from staff, 10 still

photographs of the package and its contents, the Program Statement concerning mail

management, and the chain of custody evidence.[4]  Id. at 8.  Based on this evidence, DHO Perry

determined the "greater weight" of the evidence revealed Hylton was guilty of an attempt to

introduce a hazardous tool.  Id. at 9.  Specifically, DHO Perry found the greater weight of

evidence indicated the package was mailed and addressed specifically to Hylton, as the package

contained legal documentation relating to Hylton and due to the way the cellular phone and

---

[4]    The submission of evidence DHO Perry relied upon would have been helpful, though not
necessary, to the Court's analysis.

charging cord were "methodically concealed" "for the intention of the contraband to avoid detection."  Id. at 10.

The DHO's decision to impose the loss of 41 days' good conduct time and 90 days' non-vested good conduct time, 60 days' disciplinary segregation, and loss of visitation, commissary, and telephone privileges for 6 months as sanctions after finding Hylton committed the Code 108A violation is based on "some evidence."  Indeed, DHO Perry based his findings on statements from several officers and staff members, Hylton's statements, and Hylton's presented evidence.  Hylton offers nothing indicating DHO Perry's findings were based on improper evidence or were otherwise based on evidence that was not objective.

To the extent Hylton claims the imposed punishment was too severe, such an argument is unavailing.  The BOP's Program Statement 5270.09 concerns the inmate disciplinary program.  Doc. 8 at 11.  Under this Statement, prohibited acts are categorized and assigned code numbers and severity levels.  In addition, the possible sanctions for any prohibited act are set forth in the Program Statement.  Program Statement 5270.09.[5]  A Code 108A charge is one of the "greatest severity," and the allowable sanctions for violations of charges of the greatest severity are sanctions "A through M" after a finding is made the inmate committed the charged act.  Id. at 9, 12–16 (§ 541.3(b)(1)).  An attempt to commit any charged act "is considered equivalent to committing the offense itself."  Id. at 10 (§ 541.3(b)(5)).  Thus, the allowable sanctions for a finding of guilt on a Code 108A charge include forfeiture of up to 100% of non-vested good conduct time, disallowance of up to 41 days' earned good conduct time, placement in disciplinary segregation, and loss of privileges.  Id. at 11–12, 14–15 (§ 541.4(b)(1)); Doc. 8 at 11–12.  DHO Perry found Hylton guilty of the Code 108A charged offense, and "some

---

[5]        https://www.bop.gov/PublicInfo/execute/policysearch?todo=query, last accessed Oct. 25, 2019.

evidence" supports this finding.  DHO Perry was allowed to impose the loss of 41 days' good conduct time, 90 days' non-vested good conduct time, 60 days' disciplinary segregation, and loss of visitation, commissary, and telephone privileges for 6 months after finding Hylton guilty of the charged offense, in accordance with the BOP's Program Statement for inmate discipline. Thus, the imposed sanctions "were proper under the circumstances."  See Duffy v. Atkinson, No. 09-23210, 2010 WL 3055190, at *4 (M.D. Ga. July 9, 2010) (recognizing a violation of a moderate category offense and finding imposed sanctions appropriate under the applicable policy), *report and recommendation adopted*, 2010 WL 3055223 (Aug. 3, 2010).  Accordingly, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DENY** Hylton's Petition.

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Hylton leave to appeal *in forma pauperis*.  Though Hylton has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in*

*forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Hylton's filings and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Hylton *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss and **DENY** Hylton's Petition. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Hylton leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the undersigned failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. The Court

**DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Hylton at his last known address and Respondent.

      **SO ORDERED** and **REPORTED and RECOMMENDED**, this 25th day of October, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA